DA 07-0203

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 285N

IN THE MATTER OF

K.S.,

Youth in Need of Care.

APPEAL FROM:     District Court of the Eighth Judicial District,
                 In and For the County of Cascade, Cause No. CDJ-04-170-Y
                 Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

            For Appellant Father:

                 Cathleen O. Sohlberg, Office of Public Defender, Missoula, Montana

            For Appellant Mother:

                 Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski, Assistant
                 Appellate Defender, Helena, Montana

            For Appellee:

                 Hon. Mike McGrath, Attorney General; Sheri K. Sprigg, Assistant Attorney
                 General, Helena, Montana

                 Brant S. Light, Cascade County Attorney; Sarah Corbally, Deputy County
                 Attorney, Great Falls, Montana

                                        Submitted on Briefs:  October 17, 2007

                                        Decided:  November 6, 2007

Filed:

            _____
                              Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Pursuant to Section 1, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     A.P. and R.F. appeal from the judgment of the Eighth Judicial District, Cascade County, terminating their parental rights to K.S.  We affirm.

¶3     K.S. was born in May 2004.  A.P. (the mother) and R.F. (the father) had a relationship that ended before she was born.  At the time of K.S.'s birth, R.F. was incarcerated and unaware that A.P. had given birth to a child.

¶4     The Department of Health and Human Services received reports that A.P. was not meeting K.S.'s medical needs.  On October 8, 2004, the State petitioned for temporary investigative authority and emergency protective custody over K.S. and her two siblings.[1]  R.F. appeared at the initial hearing and expressed interest in gaining custody of K.S. once his incarceration ended.  The District Court granted the State's petition, but K.S. remained in A.P's custody.  On December 13, 2004, the Department received a report that K.S. was suffering from "failure to thrive," and subsequently placed K.S. in protective custody.

¶5     In January 2005, the State petitioned for adjudication of K.S. as a youth in need of care.  On February 8, 2005, the District Court granted the petition, but K.S. was returned to A.P.'s custody.  The District Court approved a treatment plan for A.P. on February 22, 2005.

In April 2005, the District Court appointed counsel to represent A.P., and she had representation from then forward. On April 1, 2005, R.F. was released from prison and visited K.S. on April 2. The next day he was involved in an altercation and fled. In July 2005, he was apprehended, convicted of aggravated assault, and sentenced to five years with three years suspended.

¶6 On November 8, 2005, during a visit by a social worker, A.P. had left K.S. in the care of an unknown man and woman. The social worker placed K.S. in protective custody. Over the next year, A.P. sporadically attended scheduled visits with K.S. and did not make significant progress on the objectives of her treatment plan, such as improving her parenting skills and maintaining a safe residence for K.S.

¶7 On November 9, 2006, the State petitioned for a termination of the parental rights of A.P. and R.F. On February 6, 2007, and February 13, 2007, the District Court held a hearing on the termination petition. A.P. and R.F. had appointed counsel throughout the termination proceedings. On March 1, 2007, the District Court entered its judgment, terminating the parental rights of both A.P. and R.F. They now separately appeal the judgment.

¶8 We review a District Court's ultimate decision to terminate parental rights for abuse of discretion. *In re M.A.L.*, 2006 MT 299, ¶ 17, 334 Mont. 436, ¶ 17, 148 P.3d 606, ¶ 17. We review the findings of fact to determine if they are clearly erroneous and the conclusions of law to determine if they are correct. *In re A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, ¶ 28, 130 P.3d 619, ¶ 28.

¶9 A.P. argues that the District Court violated her due process rights because it did not

---

[1] A.P. has two other children with different fathers. Her parental rights to both those children

appoint counsel for her until after the treatment plan was in place. Her contention is without merit. The applicable statute in effect when this proceeding began provided that during an abuse and neglect proceeding, the court "*may* at any time . . . appoint counsel for any indigent party." Section 41-3-422(11), MCA (2003) (emphasis added). Under the 2003 version of the statute, the District Court was not required to appoint counsel for a parent until the State initiated termination proceedings. Section 41-3-607(4), MCA (2003). As A.P. notes, the statute was amended in 2005 to require counsel at all stages of an abuse and neglect proceeding. Section 41-3-425(1), MCA (2005). However, this is simply irrelevant to the case before us.

¶10     Pursuant to the earlier version of the statute, we concluded that due process does not necessarily require appointed counsel at pre-termination proceedings. *In re A.M.*, 2001 MT 60, ¶ 50, 304 Mont. 379, ¶ 50, 22 P.3d 185, ¶ 50. However, we have also recognized that in particular circumstances, appointed counsel may be appropriate prior to termination proceedings. *In re A.F.-C.*, 2001 MT 283, ¶ 44, 307 Mont. 358, ¶ 44, 37 P.3d 724, ¶ 44. The circumstances of this case did not require that A.P. have appointed counsel earlier in the proceedings. A.P. had counsel for a year and a half before the State filed to terminate her rights, and she was represented by counsel throughout the termination proceedings. The District Court's appointment of counsel after the treatment plan was in place complied with the statute in effect at the time the abuse and neglect proceeding began and adequately protected A.P.'s due process rights.

¶11     R.F. argues for the first time on appeal that the District Court erred in its interpretation

_____

have also been terminated and are not at issue here.

of § 41-3-609(4)(c), MCA. This provision allows the State to petition for a termination of parental rights without putting a treatment plan in place if "the parent is or will be incarcerated for more than 1 year." Section 41-3-609(4)(c), MCA. He argues the District Court misapplied the statute because, although he had been incarcerated more than a year at the time the termination petition was filed, he was scheduled for release less than a year later. R.F. concedes that he did not raise this issue before the District Court. This Court will not address arguments presented for the first time on appeal. *In re A.N.W.*, ¶ 41. We decline to address R.F.'s argument that the District Court misinterpreted § 41-3-609, MCA.

¶12 Our review of the entire record reveals that the findings of fact are supported by substantial credible evidence and the legal issues are clearly controlled by settled Montana law that the District Court correctly applied. The District Court did not abuse its discretion in terminating A.P.'s and R.F.'s parental rights.

¶13 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE

5